IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BONNIE HUTCHISON, ) Plaintiff, ) ) v. ) ) BINGHAM COUNTY, a Municipal ) Corporation of the State of Idaho, d/b/a ) BINGHAM MEMORIAL HOSPITAL, ) and GRANT WALKER, M.D. in his ) Individual Capacity, ) ) Defendants. ) _____) | Case No. CV-06-13-E-BLW **MEMORANDUM** **DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Dr. Walker's Motion for Summary Judgment. The Court heard oral argument and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## ANALYSIS

Ms. Hutchison sued Dr. Walker and Bingham County under § 1983, and also alleged state claims for battery and assault. Bingham County has settled, and Dr. Walker moves for Summary Judgment on the § 1983 claim. The key issue is whether Dr. Walker was a state actor when he allegedly choked Ms. Huchison.

**Memorandum Decision and Order - Page 1**

In this Circuit, there are four tests used to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2002). There is no need to examine all four tests here. Questions of fact exist on whether the joint action test applies, and that alone warrants denying the motion for summary judgment.

Under the joint action test, the Court must consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley,* 326 F.3d at 1092 (quoting *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1486 (9th Cir.1995)). Mere acquiescence of a state official in the actions of a private party is not sufficient. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978) (observing that "this Court . . . has never held that a State's mere acquiescence in a private action converts that action into that of the State"). Instead, "a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). Reading *Franklin* together with *Kirtley,* the Circuit is holding that one way to show a shared goal is to establish that the state is knowingly accepting

**Memorandum Decision and Order - Page 2**

the benefits from the unconstitutional behavior.

To determine whether questions of fact exist over whether Dr. Walker and the Hospital shared the goal of violating Ms. Huchison's constitutional rights, the Court turns first to the Medical Services Agreement, entered into by Dr. Walker and the Hospital. That Agreement begins by reciting the fact that the Hospital is owned and operated by Bingham County, a political subdivision of the State of Idaho. *See Medical Services Agreement* at ¶ 1.1. The Agreement goes on to explain that "Bingham County has or will soon have the general need for an orthopaedic surgeon and currently has the specific need for an orthopaedic surgeon who is qualified to perform spine surgery." *Id*. at ¶ 1.3. To meet this need, Hospital decided to associate with Dr. Walker to provide "orthopaedic medical services to the residents of Bingham County." *Id*. at ¶ 1.4.

The joint goal of the Hospital and Dr. Walker was "to assure that quality spine and orthopaedic services are continually and consistently available to the residents of Bingham County and [Dr. Walker] will contribute to this effort." *Id.* To attain this goal, the Hospital agreed to provide Dr. Walker with staff, guaranteed him income of $375,000 for the first two years of the Agreement, paid his moving expenses and student loans, provided him with a signing bonus of $25,000, and required his conformance with its bylaws and policies, including

**Memorandum Decision and Order - Page 3**

those prohibiting harassment. *Id.* at ¶¶ 3.6, 3.3.

In sum, the Hospital made a substantial investment in Dr. Walker to achieve the County's goal of establishing a successful spine surgery practice to benefit County residents. By itself, however, this would not be sufficient to establish joint action. There must be some evidence that the Hospital shared Dr. Walker's goal of violating Ms. Huchison's constitutional rights.

On this point, Ms. Huchison alleges that Hospital officials were aware of Dr. Walker's behavior, but told nurses that they should "let him do what he was going to do." *See Huchison Affidavit* at ¶ 7. The Hospital allegedly wanted to "hold off" until it could recoup its investment in Dr. Walker. *Id.* at ¶ 6.

This testimony at least creates an issue of fact as to whether the Hospital was "knowingly accept[ing] the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1092. A reasonable juror could conclude that the Hospital was doing more than just passively looking on, but was actively seeking to keep Dr. Walker working to generate the income needed to cover its substantial investment.

Further questions of fact are raised by Ms. Huchison's allegations that hospital officials were aware of abusive behavior and harassment by Dr. Walker, but told staff members in a meeting of Spring of 2004 that it was "their job to take care of patients," and that they should "let him do what he was going to do." *See*

**Memorandum Decision and Order - Page 4**

*Hutchison Affidavit* at ¶ 7.  In August of 2004, a staff member named Dinah sent a memo to the hospital's CEO, Mr. Kraml, concerning staff members who were "uncomfortable" with Dr. Walker, and describing a "mini training" she had given to the department.  *See Casperson Affidavit, Exhibit 7*.  Soon afterward, on September 1, an employee filed a complaint with the hospital against Dr. Walker, alleging both verbal harassment and physical abuse.  *See Casperson Affidavit, Exhibit 6*.  Finally, Ms. Hutchison alleges that prior to the events of this case – she cannot fix the precise day – Dr. Walker poked her in the sternum while emphasizing a point.  *See Casperson Affidavit, Exhibit 5*, at p. 170.  She recalls reporting this to her charge nurse.  All of these events allegedly occurred before the choking incident on March 2, 2005.

In *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), the Ninth Circuit based a finding of state action on

> evidence that the Gabicas deliberately cloaked themselves with the authority of the state in effecting repossession of the trailer premises. A single request for the police to perform their peace-keeping functions may not be sufficient to make a landlord a 'joint actor' with the state for section 1983 purposes. But the Gabicas repeatedly requested aid by the police to effect the eviction, and the police intervened at every step. We must conclude they have proceeded under color of state law.

*Id.* at 384-85.  It is alleged that Dr. Walker acted in violation of hospital policy repeatedly, and that the hospital repeatedly suppressed any response to his conduct.

**Memorandum Decision and Order - Page 5**

This goes beyond mere acquiescence because it sends a message of state approval, which a reasonable juror could find furthers the misconduct.

Dr. Walker contends that most of the evidence cited above is inadmissible hearsay.  His counsel failed, however, to move to strike the affidavits until doing so verbally at the oral argument on the motion for summary judgment.  "If a party fails to move to strike an affidavit that is allegedly deficient under Rule 56(e), he waives any objection to it."  *Allen v. Scribner*, 812 F.2d 426, 435 n.18 (9th Cir.), *amended* 828 F.2d 1445 (9th Cir. 1987).  A verbal motion made at the hearing comes too late, without a showing of good cause.  None was made here.  Absent a "gross miscarriage of justice," the Court may consider the hearsay in the affidavits.  *Id*.  The Court will do so, and finds questions of fact exist.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion

for Summary Judgment (Docket No. 32) is DENIED.



DATED: **December 7, 2007**

B. LYNN WINMILL

Chief Judge

United States District Court

**Memorandum Decision and Order - Page 7**